Case number 16-6492, Donald Nichols v. Knox County Tennessee. Oral argument not to exceed 15 minutes per side. And Mr. Wigler, for the appellant, when ready. Put that comfortably off to the side so it won't be distracting. At least I can't read it anyway. Good morning, may it please the court. I'm David Wigler of the Knox County Law Director's Office representing Knox County Tennessee. I'd like to reserve seven minutes for rebuttal. Issue one in Knox County's brief goes to the district court's subject matter jurisdiction. We believe that the stipulation of dismissal of an official capacity claim against Knox County's nurse, Amy Luxford, with prejudice, ended the litigation. Under Article III, there no longer was a case for controversy. Why not? Didn't they sue Knox County on a policy and custom basis? Absolutely. So why would a suit against her have any, I mean they sue, every civil rights suit I know of, they sue people in official capacity. We dismiss them, our district courts dismiss them all the time and leave the policy and custom claim. With one major distinction, your honor, and that is those dismissals are without prejudice. No, what you're arguing really, if the nurse were the policy making official, it could arguably be said that the dismissal was based, or maybe it could be said, that the dismissal was based on a policy or custom. But there's not even any argument about that because she's not a policy making individual. She was the supervisor under the facts at trial. She's not a policy making individual for Knox County. The argument you are making is one that would be viable only if you could be liable based on respondeat superior. And you can't be under the applicable law. Is the court's point, is your honor's point that if the sheriff was sued in his individual? Not necessarily, but I'm saying we would at least have a place to start talking. We don't even have a place to start talking here. I'm glad I prepared to discuss race judicata, your honor. The race judicata defense in issue five in the county's brief is a matter for de novo review. It involves a construction of the Tennessee law of race judicata. What did the state lawsuit allege? The state lawsuit alleged exactly the same set of material facts as the federal lawsuit. We quoted in our brief the allegations of the state court lawsuit were cut and pasted in the word processor and placed into. So the state sued for the delay in identifying the injury as a broken neck? Absolutely. In the facts, the factual allegations of the state court lawsuit were the same. Now the claims were different. The claim that was raised in the state court lawsuit was focused on two things. It was focused on the negligence in a bunk assignment to the upper bunk. So does race judicata speak in terms of the way the facts are alleged or does it speak in terms of the claim that is made? That's a wonderful question. We've addressed that in our brief. Under Tennessee law, it looks at the facts alleged. Under Tennessee law, you look at the factual allegations of the complaint. You mean post-Creech you do? Yes. Well, even prior to Creech, you looked at the allegations. Massengill was more of a claims issue, right? And then Creech came along and adopted the restatement second, correct? That's right. And so at least it seemed to me that it changed the nature of what you look at. That's right. But even if you don't look at the complaints and the identical facts pled in the two complaints, even if you don't look at that, if you look at what went to trial, the claim for pain and suffering for the first 70 days of Mr. Nichols' neck fracture was part and parcel and identical to the claim for pain and suffering that was brought in the state court. Go ahead. I'm sorry. You're talking about the source of the damages. Yes. Well, but I mean the claimed sin by the county was the bunk assignment. Isn't that quite different than the failure to diagnose or the inattention to the neck injury? Let me answer your question this way. What if Mr. Nichols had prevailed in the state court negligence action and been awarded all of his pain and suffering from the broken neck that was allegedly caused by the bunk assignment? That would include, necessarily, all of his pain and suffering for the first 70 days. All of it. Even if part of that was additionally caused. I don't think that's necessarily the case. I mean, I think that if I had been representing the county in the state court, I would have argued that his damages were limited to the bunk assignment, which resulted in the fall, that he could not be awarded damages in that case for the delay in diagnosis because that's not what was at issue in that case. Under Tennessee law, that argument would not prevail because a tortfeasor . . . What about Tennessee law doesn't reject normal causation principles? Respectfully, Your Honor, it is a normal causation principle that the original tortfeasor is responsible for all of the injury caused, even if, for example, medical malpractice enhances the injury. The original tortfeasor, under traditional tort law, is responsible for the entire damage caused, in this case, by the bunk assignment. So under Tennessee law, Mr. Nichols would have . . . It would have attenuated, isn't it, counsel, the cause of the fall? I mean, that I was in a top bunk, and I fell out, that's what happened. It's attenuated to say approximately caused therefrom was the failure to diagnose. It could have been diagnosed right away, but it was not. That's the nature of this claim. Approximately caused would be the pain and suffering that the plaintiff endured from the fall. If the fall caused the neck injury, then approximate cause would go to all of his pain and suffering from that neck injury. He would have recovered, if he prevailed in state court, all of his pain and suffering. That's the point. Can I ask you a procedural question about this? So you tried to amend. Yes. And the standard was futility. Yes. And it was denied. Yes. Why aren't we reviewing that claim rather than the merits? Because in your brief you say when the opposing side says you acquiesced and argues it's a defense, you say they waived it. But that doesn't make sense to me, because if the claim of res judicata was never amended, they would never have to raise acquiescence, because they don't raise it until you've got a valid claim for res judicata, correct? Yes, and we're raising it under the proper standard, because after our motion to amend was denied, the plaintiff was given leave to amend the complaint, because the court agreed with our motion to dismiss the complaint that the allegations of the complaint did not state a claim. So the court granted leave for the plaintiff to amend. That gave Knox County the right to file an answer, and res judicata and all of these defenses were pled in our answer to the amended complaint. And then, so you pled it in response to the amended complaint, and it was properly pled? That's correct. And then did you file, explain to me again the procedural posture. You then file a motion for summary judgment on it? On res judicata, I believe this was on, res judicata was a, it was a previously decided issue. The district court instructed us. Your time's up, so bring your answer to Judge DePauw's question to a close, and then you'll have your rebuttal time. It's in our brief specifically with citation to the record. I believe this was a summary judgment motion, but it was understood the district court had ordered me not to raise it again, and it was understood that she was not going to reconsider her prior ruling. The ruling on futility? Yes, it was instructed that if I pled it, she told me, and it's in the transcript cited in our brief, she told me that if I pled it in our answer that it would be stricken. I thought she told you not to bring up res judicata again. Yes, she did. That's right. All right. I think you've answered the pending questions, and we'll hear from you in rebuttal. Thank you. May it please the court? My name is Jonathan Taylor, and I represent the plaintiff, or the appellee, Donald Nichols, who respectfully requests that this court affirm in all respects the judgment of the district court in this case. I believe that there are somewhat complicated, at least the briefing on this case from both sides, and so I do believe that a brief recitation of five critical facts would be very important to the resolution of this case first. I imagine we've got that firmly in hand. What's that, Your Honor? I believe we've got the facts firmly in hand. Okay. All right. I mean, you use your time however you want to. It's just ordinarily not a good use of your time. I completely agree. I normally would not. Honestly, in doing this over 11 years, I don't believe I've ever asked or requested to brief the court on a recitation of the facts. But in any event, first of all, Mr. Nichols did fall from his bunk almost four feet on August 27, 2010. And second, he did not encounter anyone, a medical provider, until November 5, 2010, some 70 days after his fall from the bunk. And third, I mean, after almost five years of very contentious, very expensive litigation and numerous attempts by Knox County to attempt to argue the same procedural issues. With regard to the district court's kind of instruction to Knox County about these defenses, it was made in the context of these multiple filings. He would file a motion to amend his answer. The court would deny it on proper grounds. And then in addition to that, he would file a motion to revise. Your opponent makes a point here about the county was allowed to amend, and he was not in conformity with that. He was not allowed to respond once again to amend. Was there an unfairness? We were told there was. He was allowed to assert those defenses in his amended answer. But he couldn't move on them? I'm not sure I understand. So that's essentially saying you can't assert them. If I say you can assert a defense but you can't raise it, it's not a defense. The court had considered these arguments multiple times, not just once, not twice, but at least three times, these same defenses. And the court got frustrated. What the judge was saying was, look, I'm tired of hearing this. These issues are settled for once and for all in this court. The court gave us a very clear instruction from the bench. And I would acknowledge that counsel for Knox County actually forced the court's hand during one of these hearings about making this grandstand about how the court could not or the parties could not move forward in the case without a ruling that day. So the court took a recess. This is all in the transcript, and then came back and then dismissed all of these motions and various procedural motions. Can you get to the specifics of race judicata? The district court relied on Massengill, but my reading of Creech is Massengill is no longer the test. And so the district court seemed to apply the wrong test to the analysis of race judicata. Your Honor, to respond to that question, I am unaware of a case that has overturned Massengill. Let me put it this way. Creech has not overturned Massengill. Creech has stated the new test. And if you look at the 10 cases post Creech that cite Massengill, they only cite it for the proposition that you can't basically bring the same claim. But what they've gone to is the Creech test in Tennessee, and every case post Creech has gone to the restatement second. And that test, as I see it, and you tell me if I'm wrong, was not applied by the district judge to determine if race judicata was correct or incorrect as a defense. It was not applied. That is correct, Your Honor. The district court did not make that determination. It did rely on Massengill and noted that it had continued to be cited, and the district court, Judge Reeves, stated very clearly there was not a doubt in her mind with regard to this issue under Tennessee state law that Massengill remained a good and effective law, that Creech did not overturn that. But I think – So what did she do with Creech? And I'm sorry that I don't recall, but how did she deal with that? Your Honor, she relied on Massengill, and that was the basis of her decision with regard to this issue on the race judicata. She said that there is no doubt with regard to the facts and the claims being different in this case, the facts being that the facts in the state court case essentially ended once Mr. Nichols fell off his bunk on August 27th. The facts as presented to the jury? What facts? The facts as they were pled and the resolution of the state law claim, the negligence claim. The negligence claim ended in state court from the moment Mr. Nichols fell off his bunk on August 27th. Is the state court complaint in the record? Your Honor, I do believe it is in the district court ECF. The filing number escapes me. I believe in order to judge the race judicata, the district court would have, I would think, had to look at that complaint. So it's probably here. It is, Your Honor. I'm quite confident of that. And I'm sorry I didn't look. I don't know. I think it would probably be too much to hope for that the state court jury instructions would be a part of our record. There were no state court jury instructions. This was an issue that was decided on a motion for summary judgment. There were competing motions for summary judgment in the state court, and the circuit court for Knox County ruled against the motion of Mr. Nichols on his motion for partial summary judgment with regard to the medical expenses, and the circuit court granted the county's motion with regard to the negligence claim, and they relied on it. And the basis for that decision was a Tennessee Supreme Court case, King v. Anderson County. You heard the argument. Counsel, your brother counsel, tells us that all the damages were at issue there. They weren't. They were all proximately caused. They weren't, and the court noted that there is a distinguishment and quite confident that the skilled lawyering on the side of Knox County, if we'd have gotten farther in the state law claim and the court had not dismissed the case, that that would have been precisely the argument that the damages in the negligence case would have stopped, as of at least with regard to the fall and then the pain and suffering. And I would note for this court that we're not dealing with just pain and suffering. We're dealing with mental anguish, loss of dignity, so it's not just pain and suffering. When I understood Mr. Wiggler to indicate that the jury returned a verdict that included the same damages that were at issue here, I misunderstood him. I'm sorry. I didn't pick up on that. Well, I must have just jumped to a conclusion that was incorrect. I'm sure he didn't intend to mislead me, but I was— Yes, Your Honor. There was no jury finding and never got that far. It was decided on a motion for summary judgment. And the acquiescence issue is precisely why this is concerning. You have a case that is litigated simultaneously, and this is not unique in this area of law where you have a federal claim and you litigate it in the federal court and then you have a state law negligence claim and you litigate that in the state court. It happens all the time. This is not some unique beast or birdman here. But it also happens all the time that people file 1983 suits and they have state law claims as supplemental jurisdiction, so you're in one for them. Correct? Correct. It does happen, absolutely. So did they acquiesce? What's your argument on acquiescence? Because I think the Creech problem, in my opinion, and my colleagues may disagree, is an issue, and I don't know how it comes out. I'm just saying that the Tennessee Supreme Court, as I read it, was pretty clear, and it's a later decision that says, look, we look at a common nucleus of operative fact, and then you have to analyze, as my colleagues just said, the complaints next to each other to see if there's a common nucleus of operative fact. That wasn't done by the district court at all. But what's the acquiescence argument? The common nucleus of facts. There are very distinct differences between the state law and the federal law in 1983 and the district court, especially with regard to the amended complaint that was filed in the federal court. It dealt specifically with the Mon-El claims against Knox County. At that point, there had already been voluntary dismissals with regard to the individual nurses, and so there was at least an effort on the part of the plaintiff to attempt to try to narrow down and kind of refine the claims so that we had something that we were working with with regard to Knox County and its liability, and they filed a motion for judgment on the pleadings with regard to precisely the Mon-El claims. So the amended complaint stated very clearly that these were distinct claims. They were not pled in the same fashion in any way, shape, or form in the state law negligence complaint, and there was an amended complaint in the state law court as well, but none of those facts were the same. The operative differences— I'm sorry to interrupt you, but your argument is, Judge, even if you apply Creech, we win. Yes. But I want to go back to my question, which is, what's the argument on acquiescence? The argument on acquiescence is— And was it waived? Right. Your Honor, I believe you pointed out in Knox County's time precisely that we don't get to raise the acquiesce issue until and unless the court actually allows them to amend it, and, Your Honor, it seems somewhat disingenuous to litigate two cases simultaneously in both courts here and not at least preserve this issue, not at least take the effort to try to consolidate the issues. If they had an issue with regard to— It would not be a best practice, but what's the legal hurdle? You say it seems, what, unfair? What was your— Well, it's disingenuous. Okay. Lying to wait for five years, litigate both cases simultaneously, and then two years after the circuit court for Knox County had dismissed the state law claim, then attempt to amend your answer. I mean they baited us into that. It's like a snake in the grass, and that's what the court— and that's implicit in some of the courts in the transcripts in this record here with regard to these gotcha moments. It's kind of like shadow boxing with regard to Knox County. Yeah, but we're not good at implicit, so give us explicit. How—did they specifically acquiesce is my question, and what can we look to to find that? Well, we can look directly to the answer in the state law. Explain that to me. The answer, they never preserved any of these issues. They never preserved res judicata. None of these issues were— How would they? Res judicata doesn't exist until you have a final judgment. Well, they can still raise it and preserve it, and they can— How? I don't understand that. Well, plead it. Plead res judicata in the event that there is a final judgment or ruling. They could have preserved and reserved the issue. I thought they tried to plead it in federal court after they had a final ruling in state court. That is correct, yes. But they could have attempted to amend it earlier. When the case in the state law court is continuing to be litigated, they could have asked at any time to try to consolidate these cases. They didn't do that. They did nothing, quite frankly, until they had a final judgment, and then two years after the district court had made its decision to dismiss the state law claim, then they come into federal court and attempt to raise the issue, which the court denied based on futility, and then relied—we would submit correctly on Mass and Gill, but be that as it may, with regard to— Is that the only time they decided to raise judicata issue, the district court? Because you say she decided it three times. District court, there was at least a motion to alter or amend the order, and I believe that there was a denial of that, and then they filed another. It was essentially the same argument, and they would couch it in different procedural devices, and I think that led to the frustration. Again, that's suspicion on my part, but I think the transcript kind of reads to that effect with regard to Judge Reeves and what she did. We do believe acquiescence is a good and valid issue with regard to this raised judicata defense that they are now raising. We rely on the restatement and second of judgments of 26 with regard to acquiescence. Even if we don't, even if this court finds that the defendant did not acquiesce in regards to this defense, we do believe that Mass and Gill is still good law. It hasn't been completely overturned. We believe that we would succeed. This is the complete opposite of Mass and Gill with regard to the facts of Mass and Gill where there was a complete federal claim that was litigated to conclusion, and then they go into state court. It's the complete opposite. That's what Judge Reeves correctly held. With regard to Creech, we believe that we still succeed on Creech as well. Again, we believe that these are different facts based on a comparison of the complaints. We believe that these are different claims, quite obviously, with regard to a federal civil rights claim and a negligence claim that was pled in the circuit court. Seeing that my time is about to expire, unless the court has any additional questions, I appreciate the time, and the plaintiff would respectfully request that this court affirm in all respects the judgment of the Eastern District of Tennessee. Thank you. I've been scribbling notes and looking at the record. I want to answer all the court's questions. We filed first a motion to amend the answer that was denied, second a Rule 54B motion to revise that ruling, raising Creech and emphasizing the change in Tennessee law that was denied. When we had the opportunity to file an answer to the new amended complaint, we raised these defenses. We followed that up with a summary judgment motion, trying to be very respectful to the district court that had instructed me not to raise these issues again but yet preserve them for appellate review, and the summary judgment was denied. So three times we raised it, three times it was rejected. The one factual overlap between the two complaints that we haven't discussed was the claim for medical expenses. There's an identical claim in the state court action for $240,000 in the plaintiff's medical expenses in both cases. The state court complaint, of course, is in the record. It's page 1770 of the record. It's document 15. Why didn't you move to consolidate the cases? How would you consolidate a state court negligence claim in federal court? There's no jurisdiction. You can't remove it. How would you possibly consolidate it? How would you bring a federal action down to state court? State court has no authority to do that, and the federal court has no authority to remand an original action. Well, you could definitely bring 1983 actions in state court, but your point is there's no way to move it from federal court to state court or vice versa. That's right. Once the federal court acquired original jurisdiction over the federal court. So it's really within control of the plaintiff how he decides to proceed. Absolutely. He was master of these complaints. The district court, to answer your question, Judge, never looked at the two complaints under Creech, never compared the absolutely identical factual allegations of the two complaints, never compared the prayer for relief. Is that because she was applying Massengill, and your opposing counsel is correct that Massengill has never been overruled, albeit Creech came later, and so Creech arguably controls. That's correct. That's correct, and I think it's very important for this court to address that, and we've asked in two ways that that be done. The most perhaps respectful way to the Tennessee Supreme Court is to certify the question under Rule 23. We filed that motion in this court for certification of these questions to the Tennessee Supreme Court, and that was referred to this panel. So the most respectful way might be to certify this question to the Tennessee Supreme Court. Otherwise, we think that Creech clearly overruled that part of Massengill that the district court relied on. The Massengill opinion . . . Remind me of what year Creech was decided. Creech was, I believe, 2009. Right there. Well, you know, you've got . . . Right there. 2009. 2009. Wouldn't it seem a little odd to certify a question when we have a number of years subsequent to Creech of both the Tennessee courts and this court applying Tennessee race judicata principles? I mean, wouldn't one think that we wouldn't need to ask the Tennessee Supreme Court, but that we would be able to competently divine on our own what the state of the law is? I certainly believe that's the case, and I think the court could find that Creech abrogated that statement. There's one statement in Massengill that's troubling, and it's the definition of a cause of action. And the mistake that the Massengill court made was treating a cause of action identical to a claim. And that was the whole point of this blowup. A cause of action in black law engineering is the fact that facts give a person the right to judicial relief. A cause of action instead of facts. That's a little bit surprising to us lawyers. It's usually articulated in a complaint, and the complaints here are entirely different. Often we think of a cause of action generically as a claim, and that's what the Supreme Court did in Massengill. They're holding that the district court relied on. Reggie Mutacata is not properly applicable in the case of Barney, but the cause of action in state court is not the same as the cause of action in the United States district court. And here the district court below says in Massengill the Tennessee Supreme Court explained that a 1983 action seeking damages based on deprivation of a right guaranteed by the Bureau of Constitution is quite different from such common law forms as false arrest, imprisonment, deletion, prosecution, and outrageous conduct. That was precisely what the district court quoted from Massengill. And that's the error that the Massengill court made. In Creech, they recognized jurists have found it difficult to give a proper definition to the term cause of action. It's just a mistake that they made, and it was not essential to the holding. The irony of all of this is that the result in Massengill would still be true today under Creech. In Massengill, the plaintiff could not bring a federal claim in state court. Prior to Pauling v. Goins, federal claims under 1983 could not be brought in Tennessee state courts. But your opposing counsel argues, okay, apply Creech even if you do, and even if you look to whether the two suits arose from a common nucleus of operative fact, they don't. Well, they certainly do if you look to the complaints. Absolutely. I urge you, please, look at the state court complaint in the record, look at the facts pled, and compare that to the federal complaint. They absolutely do. They're cut and paste with a word processor. Well, I don't think you have time to do it, so just continue the way you are. I'd be happy to. I prefer to address your question. I don't want to start you off on set-off at this point because you don't have enough time to address it. Well, that's where I was headed anyway, Your Honor. Well, take whatever time you have left, but not anymore. Thank you. Thank you. This is a case involving an attempt to multiple bites at the apple. They had bites in state court and bites in federal court. Then they had bites against the nurse and bites against the county. And when we discovered and when they filed the stipulation of dismissal, we sought through discovery to get their release and find out the amount. We're entitled to a set-off. We're entitled to the judgment to be dismissed, to the case be dismissed. We ask that the district court be reversed. We thank you both for your argument, and we'll consider the case carefully. Thank you.